Mr. Barry Emigh 1104 7th Street Hot Springs, AR 71913-4225
Dear Mr. Emigh:
You have requested certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of a popular name and ballot title for a proposed constitutional amendment. You have previously submitted twelve similar measures, ten of which I rejected due to ambiguities in the text of your proposed amendments. See Op. Att'y Gen. Nos. 2002-042, 2002-026, 2002-001, 2001-380, 2001-358, 2001-341, 2001-173, 2001-110, 2001-095 and 2001-074. My office has revised and certified popular names and ballot titles for two similar measures, as evidenced by Op. Att'y Gen. Nos. 2001-129 and 2001-196. You have since made additional changes to your measure and submitted a revised popular name and ballot title for my certification. Your proposed popular name and ballot title state:
 Popular Name AN AMENDMENT AUTHORIZING BINGO AND RAFFLES BY NON PROFIT ORGANIZATIONS, AND THE ORGANIZATION OF A CORPORATION BY BARRY LEE EMIGH TO OPERATE, HIRE PERSONS AND SUBCONTRACT INDEPENDENT CONTRACTOR(S) TO OPERATE FOR PROFIT GAMBLING
 Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION AUTHORIZING THE OPERATION OF BINGO AND RAFFLES BY NON PROFIT ORGANIZATIONS INCORPORATED IN THE STATE; AUTHORIZING BARRY LEE EMIGH TO ORGANIZE A CORPORATION AS THE INCORPORATOR TO BE ENTITLED THE "DIAMOND STATE CASINOS, LIMITED" WITH THE RIGHT OF BARRY LEE EMIGH FOR ANY REASON TO APPOINT ANOTHER PERSON TO REPLACE HIM AS THE INCORPORATOR; AUTHORIZING THE INCORPORATOR TO APPOINT 6 PERSONS AS CORPORATE BOARD DIRECTORS TO ESTABLISH THE BOARD OF DIRECTORS OF THE "DIAMOND STATE CASINOS, LIMITED"; REQUIRING THE SECRETARY OF STATE TO INCORPORATE THE "DIAMOND STATE CASINOS, LIMITED" UPON FILED APPLICATION WITH THE NAMES OF THOSE APPOINTED CORPORATE BOARD DIRECTORS; PROVIDING EACH SIGNATURE THE SECRETARY OF STATE COUNTS AS VALID TO PLACE THIS AMENDMENT ON THE BALLOT WITH EXCEPTION OF A CANVASSER'S SIGNATURE ON A PETITION AS PETITIONER WITH THEIR SIGNATURE ON THAT PETITION AS CANVASSER SHALL BE COUNTED AS 2 SHARES OF STOCK WITH BARRY LEE EMIGH AS THE AUTHOR AND SPONSOR OF THIS AMENDMENT RECEIVING 1 OF 2 SHARES WITH THE CANVASSER RETAINING THE OTHER SHARE WITH ALL SHARES OF STOCK FILED AS "PREFERRED STOCK" WITH THE APPROPRIATE STATE AND FEDERAL SECURITIES DEPARTMENT(S) BY THE CORPORATE BOARD OF DIRECTORS OF THE DIAMOND STATE CASINOS, LIMITED"; REQUIRING THE CORPORATE BOARD OF DIRECTORS OF THE "DIAMOND STATE CASINOS, LIMITED" TO ABIDE BY ALL THE LAWS, RULES AND REGULATIONS OF THE STATE NOT PROVIDED FOR DIFFERENTLY WITHIN THE PROVISIONS OF THIS AMENDMENT AND TO FULLFILL [FULFILL] ANY AND ALL OTHER REQUIREMENTS REQUIRED OF ALL OTHER CORPORATIONS INCORPORATED IN THE STATE NOT PROVIDED FOR DIFFERENTLY WITHIN THE PROVISIONS OF THIS AMENDMENT; EXEMPTING THE CORPORATE BOARD OF DIRECTORS OF THE "DIAMOND STATE CASINOS, LIMITED" FROM CALLING AN ANNUAL MEETING OF THE STOCK HOLDERS WITH THE RIGHT OF THE STOCK HOLDERS BY PETITION TO REQUIRE THE BOARD OF DIRECTORS TO CALL A MEETING OF THE STOCK HOLDERS; AUTHORIZING THE LEGAL SHIPMENT OF GAMING DEVICES; AUTHORIZING THE "DIAMOND STATE CASINOS, LIMITED" UPON INCORPORATION TO OPERATE, HIRE AND SUBCONTRACT ANY INDEPENDENT CONTRACTOR(S) TO OPERATE GAMBLING WITHOUT LICENSE, OR FEE BY THE STATE, OR ANY SUBDIVISION OR AGENCY THEREOF, ON ANY DAY FOR THE WHOLE OF A TWENTY-FOUR HOUR DAY WITHIN THE INTERIOR AREA OF ONE STRUCTURE WITHIN EACH OF THE FOLLOWING COUNTIES OF CRAWFORD, JEFFERSON, PULASKI, GARLAND, MILLER, CRITTENDEN, MISSISSIPPI, BENTON AND QUACHITA WITH SUCH STRUCTURE LOCATED WITHIN THOSE COUNTIES OR WITHIN ANY CITY AND TOWN WITHIN THOSE COUNTIES WITH THE SALE AND COMPLIMENTARY SERVICE OF ALCOHOLIC BEVERAGES WITHOUT LICENSE, OR FEE BY THE STATE, OR ANY SUBDIVISION OR AGENCY THEREOF, WITHIN THE INTERIOR AREA OF THOSE STRUCTURES USED FOR GAMBLING ONLY DURING THE OPERATION OF GAMBLING (INCLUDING THOSE COUNTIES, CITIES AND TOWNS IN WHICH THE SALE OF ALCOHOLIC BEVERAGES IS OTHERWISE PROHIBITED); REQUIRING THE "DIAMOND STATE CASINOS, LIMITED" AND THOSE PERSONS HIRED AND SUBCONTRACTED AS INDEPENDENT CONTRACTORS TO OPERATE GAMBLING TO PAY ALL STATE AND LOCAL TAXES AS APPLICABLE AND TO OBTAIN AND PAY FOR ANY LICENSES AND PERMITS NOT EXEMPTED WITHIN THE PROVISIONS OF THIS AMENDMENT; DEFINING "GAMBLING" AS THE RISKING OF MONEY ON A CONTEST OR CHANCE OF ANY KIND BETWEEN PERSONS WHERE ONE IS LOSER AND OTHER GAINER WITH GAMES OF CHANCE OR SKILL AND ANY COMBINATION THEREOF; DEFINING "STRUCTURE" AS ANY KIND AND SIZE OF BUILDING WITH ANY ATTACHED ADDITIONS CONSIDERED A SINGLE STRUCTURE TO INCLUDE ANY KIND AND SIZE OF ANCHORED WATER VESSEL WITH ANY ATTACHED ADDITIONS TO THAT WATER VESSEL CONSIDERED A SINGLE STRUCTURE; THE PROVISIONS OF THIS AMENDMENT SHALL TAKE EFFECT IMMEDIATELY UPON PASSAGE OF THIS AMENDMENT EXCEPT AS OTHERWISE PROVIDED AND REQUIRING THE GENERAL ASSEMBLY AND ANY AND ALL STATE OR LOCAL RULE MAKING AUTHORITIES TO MAKE ALL OTHER AND FURTHER LAWS AND REGULATIONS TO THE ENFORCEMENT OF THIS CONSTITUTIONAL AMENDMENT; MAKING THE PROVISIONS OF THIS AMENDMENT SEVERABLE; AND REPEALING ALL LAWS AND CONSTITUTIONAL AMENDMENTS IN CONFLICT WITH THIS AMENDMENT;
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment. See Arkansas Women's Political Caucusv. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185 (1958); Beckerv. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990); Gaines v.McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; andWalton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. §7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five-minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Pluggev. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic ActionCommittee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citingLeigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed ballot title due to a remaining ambiguity in the text of your proposed measure. A number of additions or changes to your ballot title may also be necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguity. I am therefore unable to substitute and certify a more suitable and correct ballot title pursuant to A.C.A. § 7-9-107(b).
The ambiguity arises from the definition of "gambling" under your proposed amendment. Subsection 1 (a) of Section 3 defines "gambling" as "the risking of money between two or more persons on a contest or chance of any kind where one must be loser and the other gainer with games of chance or skill and any combination thereof." This definition is consistent with the common understanding of the term "gambling" as developed by the courts. See Portis v. State, 27 Ark. 360 (1872) andState v. Torres, 309 Ark. 422, 831 S.W.2d 903 (1992). It appears to include all forms of gambling, and would include a "lottery" as that term is commonly understood, i.e., a "species of gaming which may be defined as a scheme for the distribution of prizes by chance among persons who have paid, or agreed to pay, a valuable consideration for the chance to obtain a prize." See Burks v. Harris, 91 Ark. 205, 120 S.W. 979 (1909).See also Op. Att'y Gen. 2002-042 at 7 (noting that a lottery is a form of gambling).
The authority of "Diamond State Casinos, Limited" to operate "gambling" under your proposed amendment will therefore not be limited to what might be thought of as casino gambling activities, but will also include the authority to operate a lottery or lotteries as noted above, unless stated otherwise. See again Op. 2002-042. As you know, however, our constitution currently prohibits lotteries. Ark. Const. article 19, section 14. It appears, therefore, that your amendment would create an exception from this prohibition in favor of "Diamond State Casinos, Limited." This would of course constitute a significant change in current law. I am uncertain, however, whether this is in fact your intent, in light of the reference to a "casino operation" in your March 4, 2002, e-mail submission of this latest proposal. This suggests that you are under the impression that your amendment would authorize casino gambling only. This question regarding the effect of your amendment with respect to the operation of a "lottery" must be clarified for proper reflection in the ballot title.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest,341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id.
Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General
MP/cyh